**SO ORDERED.**

**SIGNED this 25 day of February, 2010.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| ERIC P. FLORES and | ) | Case No. 07-41541 |
| BERNADETTE T. FLORES, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DARCY D. WILLIAMSON, Trustee for the | ) | |
| Bankruptcy Estate of Eric P. Flores and | ) | |
| Bernadette T. Flores, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-7081 |
| | ) | |
| THE IMPERIAL COLLEGE OF SCIENCE, | ) | |
| TECHNOLOGY AND MEDICINE a.k.a. | ) | |
| IMPERIAL COLLEGE LONDON and | ) | |
| CATHERINE FLORES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
OF DEFENDANT IMPERIAL COLLEGE**

This matter is before the Court on Defendant Imperial College of Science, Technology and Medicine's Motion to Dismiss.[1] Defendant argues that the Court lacks personal jurisdiction over it, and that this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Both parties have briefed this matter, and the Court is ready to rule. This is a core matter over which this Court has jurisdiction.[2]

I. **FINDINGS OF FACT**

The Trustee filed this adversary proceeding on October 30, 2009. In her claims against Imperial College of Science, Technology and Medicine ("Imperial"), the Trustee alleges that the Debtors in the underlying bankruptcy case made three transfers to Imperial in the amount of $11,000 on August 24, 2007, and in the amounts of $25,264 and $12,800 on September 21, 2007. The Trustee contends these transfers were made to pay antecedent debts at a time when Debtors were insolvent and allowed Imperial to receive more funds than it would have received under a hypothetical liquidation analysis. As such, the Trustee contends that these transfers constitute preferential transfers and can be avoided under 11 U.S.C. § 547.[3]

The Trustee also claims that these transfers were made with the intent to hinder, delay or defraud a creditor, or that Debtors received less than a reasonably equivalent value in

---

[1] Doc. 5.

[2] 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(F) (core proceeding).

[3] This bankruptcy was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted.

2

exchange for such transfers, and that Debtors were insolvent at the time of the transfers. Therefore, the Trustee claims that these transfers constitute fraudulent transfers and can also be avoided pursuant to § 548.

Imperial's motion to dismiss claims that the Court lacks personal jurisdiction over it. Imperial is a college located, at least primarily, in London, England. The Trustee contends, however, that it has sufficient business dealings and contacts with the United States to be subject to personal jurisdiction, including:

1. Imperial has engaged in a collaborative agreement and initiative with the University of Texas, M.D. Anderson Cancer Center and the Texas - UK Collaborative. The agreement is funded in part by the Department of Trade and Industry UK - Texas Bioscience Initiative;

2. Imperial has applied for and currently holds a United States patent;

3. Imperial, Columbia University, and Exploit Technologies, Pte. Ltd. of Singapore engaged in a tripartite agreement on technological commercialization;

4. Imperial is a member, partner, or collaborator in the establishment of a new Center for Process Systems Engineering at Georgia Institute of Technology, with a super center to be established between the two;

5. Imperial conducts business, networking and research with Georgia Institute of Technology and California Institute of Technology through the Global Alliance of Technological Universities;

6. Imperial is a member of the AtlanTICC Alliance, which is a tripartite alliance between Imperial College, Georgia Institute of Technology and Oak Ridge National Laboratory (a large U.S. laboratory);

7. Imperial is a member of NAFSA, Association of International Educators and of North American Fellowships Association, and has attended conferences of these groups in the United States, but not for the purpose of soliciting students;

8. Imperial is a member of GlobalTech Alliance, which is a consortium between seven universities, two of which are located within the United States; and

9. Imperial has an academic relationship with Carnegie Mellon, a university located in Pennsylvania. Specifically, Imperial has a foreign exchange program with Carnegie Mellon, Imperial has a partnership with Carnegie Mellon, and scholarships titled the "Imperial Marshall Scholarships" are available to Carnegie Mellon students to continue their education with Imperial College.

The Trustee also alleges that Imperial solicits business in the United States by providing information on its website which might have the purpose and effect of attracting and assisting prospective international students. Imperial also maintains various clubs and societies at its London campus for foreign students, which include students from the United States.

Imperial admits (by way of sworn affidavit)[4] that it has entered into a collaboration agreement with M.D. Anderson, but notes that the agreement is merely an agreement between the two institutions to share research materials and data, as well as granting M.D. Anderson a royalty-free, non-exclusive license to use any intellectual property arising from the collaboration for academic purposes. Although employees of Imperial did visit the United States to discuss the collaboration, the agreements were signed by Imperial in the United Kingdom, and its efforts are funded through a grant from the British government.

---

[4] On the subject of Imperial's affidavit, the Trustee objected to it on the basis that it failed to show that the affiant had personal knowledge of the facts stated therein and was competent to testify. Defendant then submitted an amended affidavit firmly establishing that personal knowledge and competence. (Doc. 20). Trustee filed a Motion to Strike that affidavit (Doc. 22). The Court overrules that Motion to Strike and permits the supplemental affidavit; it simply corrects the missing information about the affiant's competence to testify, and the Trustee does not suggest that the facts alleged therein are in any way unreliable.

4

Imperial also agrees that it signed a memorandum of understanding with Columbia University and Exploit Technologies in Singapore in 2003, but that the memorandum merely stated the parties' commitment to work together to promote best practices and to explore the building and clustering of technologies. The memorandum expired in 2004.

Imperial further indicates that it has not entered into any formal agreements with the Georgia Institute of Technology, but does have an informal knowledge-sharing collaboration with that institution, whereby Georgia Institute of Technology may solicit advice from Imperial on how to structure its research with a view toward setting up a research center similar to Imperial's Centre for Process Systems Engineering in London. The "super center" referred to in the complaint was never formalized.

Imperial's only connection to the California Institute of Technology is that it is a member of the GlobalTech Alliance, which was launched in April 2009. The alliance is a consortium between seven universities worldwide. The only activity, to date, has been one meeting to launch the alliance, which was held in Singapore nearly one year ago.

In additional to addressing the nature and extent of the contacts raised by the Trustee, Imperial has also raised additional facts by affidavit that it contends are relevant to the issue of whether it has sufficient contacts with the United States to subject it to personal jurisdiction in this case. Those additional facts include:

1. Imperial does not maintain a place of business, in the form of either a campus or office, in the United States;

2. Imperial does not own any real property in the United States;

3. Imperial does not employ any individuals in the United States;

4. Imperial does not have a designated agent for service of process inside the United States;

5. Imperial does not hold itself out as doing business in the United States; and

6. Imperial does not actively solicit students from the United States, but instead provides its prospectuses to United States students only at the request of a prospective student.

Additional facts will be discussed below, when necessary.

## II. ANALYSIS

Imperial has filed a motion to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(2),[5] alleging that the Court does not have personal jurisdiction over it. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[6] Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."[7] The requirement of "minimum contacts" protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home, and

---

[5] Fed. R. Civ. P. 12(b) is made applicable in this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b).

[6] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (holding that exercise of jurisdiction over a nonresident defendant must not offend the due process clause of the Fourteenth Amendment).

[7] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

6

in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar.[8]

In bankruptcy cases, where nationwide service of process is provided for by Fed. R. Bankr. P. 7004(d), the relevant "forum state" is the United States as a whole, rather than the individual state in which the action is brought.[9] As such, the Trustee must demonstrate sufficient minimum contacts between Imperial and the United States to exercise personal jurisdiction over it.

"'The Plaintiff bears the burden of establishing personal jurisdiction over the defendant.'"[10] When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.[11] The Trustee may make this prima facie showing by demonstrating, through an affidavit or other written materials, facts that if true would support jurisdiction over the defendant. Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true.[12] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must

---

[8]*Id.* at 292.

[9]*Atteberry v. Barclays Bank PLC (In re Atteberry)*, 159 B.R. 1, 6 (D. Kan. 1993).

[10]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)); *Campbell v. Bank of America, N.A.*, 404 F. Supp. 2d 1292, 1300-1301 (D. Kan. 2005).

[11]*Id.* (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996)).

[12]*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

7

present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[13]

The Trustee may potentially show that Imperial has sufficient "minimum contacts" in two ways. First, she can demonstrate that Court may assert specific jurisdiction over Imperial "if the defendant has 'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[14] In order to establish such specific jurisdiction in the United States, the Trustee must show that Imperial "should reasonably anticipate being haled into court there."[15]

If the Court's alleged jurisdiction does not directly arise from Imperial's forum-related activities, the Court may potentially still maintain general personal jurisdiction over it based on its general business contacts with the United States.[16] However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'"[17] In deciding whether jurisdiction is proper, the Court

---

[13] *Id.* (quoting *Burger King*, 471 U.S. at 477).

[14] *Id.* at 1090-91 (citing *Burger King*, 471 U.S. at 472).

[15] *Id.* at 1091.

[16] *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

[17] *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Helicopteros,* 466 U.S. at 416); *Cardenas v. Dorel Juvenile Group, Inc.*, 358 F. Supp.2d 1042, 1044-45 (D. Kan. 2005).

8

must also find that asserting jurisdiction would "comport with fair play and substantial justice."[18]

### A. Trustee has failed to show that the Court has specific jurisdiction over Imperial.

The Trustee alleges that this Court has specific jurisdiction over Imperial because Imperial purposely directs its activities toward prospective students from the United States, and that the underlying cause of action arises out of or relates to those activities. Specifically, the Trustee alleges that Imperial maintains a website that provides "a wealth of information to prospective and enrolled American students including admission, bank accounts, visa and immigration advice, career advisory services, student financing, international research projects, and so forth." The Trustee also alleges that Imperial solicits prospective students in the United States by providing its prospectuses (upon request) to United States students and that it made five presentations to Texas universities.

The Trustee further claims that "[b]ut for Imperial College's marketing to United States citizens and accepting United States citizens as students, specifically Defendant, Catherine Flores, there could be no payments made to Imperial College for Catherine Flores' tuition." The Trustee then argues that "[b]ecause those tuition payments to Imperial College are the subject of this adversary proceeding, this case 'arises out of' Imperial College's contacts with the United States" and, as such, there exists specific personal jurisdiction.

---

[18] *See Burger King,* 471 U.S. at 476 and *World-Wide Volkswagen*, 444 U.S. at 292.

The Court finds that the contacts Imperial has with the United States, as relied upon by the Trustee to support a claim of specific jurisdiction, are either not purposefully directed at residents of the United States or that the litigation does not result from injuries arising out of or related to those activities. First, the Court finds that maintaining a passive website wherein people from around the world, including the United States, can seek information about Imperial and assist them if they choose to attend that college as an international student is insufficient.[19] Similarly, simply responding to requests for information from students interested in attending the London college is insufficient to support a finding that Imperial purposely directed its activities at residents of the United States. There are no allegations that Imperial actively recruited students in the United States, but rather, only that Imperial made itself available and provided information for United States residents who were interested in traveling to London to attend this college.

More importantly, the Trustee does not allege that any of the activities that she claims Imperial used to entice students to attend its college in London were directed at Catherine Flores, or influenced her decision to attend in any way. The Trustee's claims in this case are specifically tied to the tuition payments made by Debtors for their daughter to attend this college. Without any allegations that the speeches given in Texas, or the existence of the

---

[19] *See Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (noting that "exercising personal jurisdiction is not appropriate when the Internet use involves '[a] passive Web site that does little more than make information available to those who are interested in it.'"); *Oxion, Inc. v. O3 Zone Co.*, 2007 WL 2155675, *5 (D. Kan. 2007) (citing *Marynard v. Phila. Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 816-17 (Fed. Cir. 2001) (holding passive web sites do not satisfy the purposeful availment test)).

10

website, or the willingness to send prospectuses out to potential students, were related to Ms. Flores' decision to attend Imperial, there is no link to provide specific jurisdiction.[20]

### B. Trustee has failed to show that the court has general jurisdiction over Imperial.

The Trustee contends that even if this Court does not have specific jurisdiction over Imperial, that Imperial has sufficient contacts with the United States to satisfy the general jurisdiction test. As noted above, the Court can exercise general jurisdiction over Imperial if the Trustee can show that Imperial has engaged in "continuous and systematic general business contacts" with the United States.

The Court finds the Trustee has failed to show that Imperial's contacts with the United States are continuous or systematic. Imperial is a college located in London. It owns no land in the United States, has no offices or campuses in the United States, has no employees in the United States, does not hold itself out as doing business in the United States and does not actively solicit business in the United States. All the Trustee has alleged is that Imperial has entered into a small handful of agreements with colleges and universities in the United States to share in research and information, has sent its faculty and/or staff to give approximately five lectures at colleges in Texas, considered building a "super center" in conjunction with the Georgia Institute of Technology (which never moved forward), maintains a website that

---

[20]*See OMI Holdings*, 149 F.3d at 1092 (holding that defendant must purposefully avail itself of privilege of conducting activities in the state, and purposeful availment requires actions by the defendant that create a "substantial connection with the forum state.").

11

has information on it for individuals from outside of London who are considering attending the college in London, and sends prospectuses to students in the United States upon request.

The Court's finding that the types and number of contacts the Trustee alleges Imperial had made are insufficient to sustain a claim of general jurisdiction is bolstered by other cases in the Tenth Circuit where the defendant arguably had significantly stronger ties to the forum state, but where jurisdiction was nonetheless found to be lacking. For example, in *Soma Medical Intern. v. Standard Chartered Bank*,[21] the plaintiff was a Delaware corporation doing business in Utah. It opened a bank account with the defendant in Hong Kong. An individual not related to the plaintiff successfully converted all of the funds from the SCB bank account in Hong Kong, and the plaintiff filed a lawsuit alleging breach of contract, negligence, breach of implied covenant, and civil conspiracy, all arising from SCB's wrongful disbursement of the funds.

The Tenth Circuit found that specific jurisdiction was lacking despite the fact that SCB had (1) sent by mail a signature card to plaintiff's address in Utah; (2) sent two letters to plaintiff's Utah bank soliciting signature verification; (3) initiated fourteen other written communications with the plaintiff concerning the account; (4) created an account number and acknowledged the business relations with the plaintiff at its Utah address; and (5) created internal records of the plaintiff's account and maintained various documents evidencing wire transfers of funds and various other activities. In addition, SCB maintained a website

---

[21] *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d at 1296.

accessible from Utah, filed several UCC-1 financing statements in Utah, recorded several instruments in Utah, and filed five civil actions in Utah state courts during the three year period preceding the lawsuit against SCB seeking to protect and/or enforce various interests of SCB. Despite these numerous contacts with the state of Utah, the Tenth Circuit found that the plaintiff had failed to make a prima facie case that SCB was engaged in the kind of "substantial and continuous activity" necessary to subject SCB to general personal jurisdiction in Utah.

The Court finds that the contacts present in *Soma* were stronger than the minimal contacts demonstrated in this case, and the Tenth Circuit wasted little time finding that jurisdiction was lacking in *Soma*. Similarly, the Court finds that sufficient contacts are lacking in this case. Imperial's actions simply cannot be classified as "continuous" or "systematic." Instead, they appear to be fairly irregular and very limited in scope. The Court is certainly aware that a plaintiff's burden of proving that jurisdiction exists in the preliminary stages of litigation is light.[22] But, the Trustee has presented no allegations or affidavits to establish that Imperial had any meaningful contacts, ties, or relations to the United States.[23] Absent more meaningful evidence on this issue, the Court is unable to find that Imperial has

---

[22] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Pytlik v. Prof'l Res. Ltd,* 887 F.2d 1371, 1376 (10th Cir. 1989) (holding that when jurisdictional allegations are challenged in a pleading, the plaintiff must provide "competent proof of the supporting facts" to support the jurisdictional allegations."). Here, all Plaintiff did was provide the Court the links to Defendant's website. Accessing the website where directed by the Trustee's brief did not prove what the Plaintiff suggested it did.

[23] *Campbell v. Bank of America, N.A.*, 404 F. Supp.2d at 1307.

13

the type or degree of contacts with the United States that would satisfy constitutional due process requirements.

## III. CONCLUSION

The Court finds that the essentially unrebutted record submitted by the moving defendant reveals that it does not have continuous and systematic contacts with the United States such that this Court could exercise general jurisdiction over it. The court therefore finds that it does not have general jurisdiction over Imperial. Further, the Trustee has not met her burden of establishing that this Court's exercise of jurisdiction over Imperial would satisfy the due process principle that a defendant must have sufficient minimum contacts with the forum. Imperial lacks such sufficient contacts with the United States to be subject to personal jurisdiction in this Court. The Trustee has failed to allege sufficient contacts with the United States to establish either specific or general jurisdiction. Although Imperial does have limited contacts with the United States, they are neither of the quality nor the quantity necessary to justify a finding of personal jurisdiction, at least under the facts alleged by the Trustee. The Court therefore dismisses Plaintiff's Complaint against Imperial.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Defendant Imperial College of Science, Technology and Medicine's Motion to Dismiss[24] is hereby granted. All claims against this defendant are hereby dismissed.

###

---

[24] Doc. 5.

14